a want of ordinary and reasonable care would flow from inferences dependent upon measurements and estimates which it is peculiarly within the province of a jury to make. The law required him to look and listen in accordance with the dictates of ordinary prudence, but did not require the guaranty of any specific result. Turell v. Railroad Co., 49 App. Div. 94, 63 N. Y. Supp. 402, and cases cited.

More difficulty accompanies the question of defendant's negligence. Here, too, however, the standard of duty enjoins reasonable care; and, while the evidence is slight, the company cannot be said to be absolved as matter of law. There is evidence from which the jury could conclude that the motorman might reasonably anticipate that pedestrians would use the crossing at the intersection of Buffalo avenue with Fulton street, even although the avenue does not actually cross the street. No case is cited to the effect that there is no obligation at such a crossing to have the car under control, so that an accident could be averted in case some one stepped suddenly from behind the wagons which were seen to obstruct the view of the crossing; and there is evidence tending to show considerable speed in the fact that the car ran at least 50 feet below the crossing before stopping. At all events, a witness attracted by the crowd in front of the drug store found the car standing at the time that distance below the crossing. In the case of Towner v. Railroad Co., 44 App. Div. 628, 60 N. Y. Supp. 289, it appeared that the plaintiff looked in both directions before leaving the curb, and saw no car, but on attempting to cross the tracks was struck by an approaching car, which sounded no warning until the moment of collision, the car running from 50 to 75 feet before it was stopped; and this court held that the questions both of plaintiff's freedom from contributory negligence and defendant's negligence should have been submitted to the jury. In this case the jury would decide the point at which the motorman saw or would have seen the plaintiff in the exercise of reasonable care, and would also determine whether such care was exercised as the time permitted in attempting to avoid the accident, or to warn plaintiff of his danger, in view of the existence of the crossing, the presence of the wagons, and the speed of the car, as they may find it.

It follows that the plaintiff's exceptions should be sustained, and a new trial granted, with costs to abide the event. All concur, except SEWELL, J., taking no part.

---

(59 App. Div. 60.)

### SMITH v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

CARRIERS—INJURY TO PASSENGER—NEGLIGENCE—PRESUMPTIONS.

Plaintiff, a passenger on defendant's cable car, was injured in a collision caused by a break in the cable where it was spliced. Defendant proved that the cable was the best in use; that a system of constant inspection was in operation; and that the defect was not discovered in time to avoid the accident; but the inspectors on duty the day of the accident were not called. The splicer, who was corroborated by another, testified that he made the splice eight days before; that the work was

thoroughly and carefully done; and that a splice would last five or six weeks. *Held* insufficient to overcome the presumption of negligence arising from the accident, and the case was therefore properly submitted to the jury.

Appeal from trial term, Queens county.

Action by Anna M. Smith against the Metropolitan Street-Railway Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and JENKS, JJ.

Charles F. Brown (Henry A. Robinson, on the brief), for appellant. John V. Bouvier, Jr., for respondent.

HIRSCHBERG, J. The plaintiff was injured on January 5, 1897, between 6 and 7 o'clock in the afternoon, while a passenger on the defendant's Lexington avenue line in Manhattan borough, New York. The cars are run by cable power, and a break in the cable caused the car behind the one in which the plaintiff was riding to run away at or about 87th street, whereupon it collided with the one in which the plaintiff was at or near 94th street, and the two continued to 96th street, where a second collision occurred with a car ahead, and the plaintiff received her injuries. The speed of the cable was said to be 10 miles an hour, but from the time required to make its circuit it is evident that its actual speed was between 11 and 12 miles an hour. The learned counsel for the appellant argues, with his usual force and acumen, that the presumption of the defendant's negligence arising from the happening of the accident was completely overcome by the testimony, and that the complaint should accordingly have been dismissed. The evidence did, indeed, establish the fact that the cable was the best in use; that a system of constant inspection was in operation; and that the defect in the cable which caused the accident was not discovered in time to prevent the occurrence; nevertheless it was proper to submit the case to the jury, and a nonsuit would have been error. The cable is 43,000 feet long. It traverses the distance covered by its operation, viz. from 25th street to 125th street, and returns, every 42 minutes. The system of inspection consists chiefly in stationing men at the power house at 25th street, to watch the cable as it is paid out, in order to discover defects, and a given point is thus under observation once in every 42 minutes. The watchers on the afternoon in question, Mansfield and Nelson, were not called as witnesses. Mansfield was said to be in Mexico, but Nelson was in New York, and the evidence of the defendant's inability to procure his attendance might very well be regarded by the jury as unsatisfactory. The cable was stranded at the point where it had been spliced. Moore, who had the supervision of the operation of the cables, and whose duty it was to splice and repair them, testified that he made the splice eight days before the accident. He also testified that a splice would last on the average five or six weeks. The fact that this particular splice broke so unusually soon after it was made is certainly some evidence that it was defectively done, and although Moore is corroborated by another

splicer, Hamilton, and both testify that the work was thoroughly and carefully done, and the cable in apparent perfect order a few hours before it broke, yet their credibility was a proper question for the jury, inasmuch as their own negligence was a direct issue. In Volkmar v. Railway Co., 134 N. Y. 418, 31 N. E. 870, the court of appeals held that the fall of a broken bolt from the defendant's elevated structure was sufficient to raise a presumption of negligence; that the evidence of the inspector that his duty was to carefully examine the bolts for the discovery of breaks, and that he performed such duty to the best of his ability, was not sufficient to overcome the presumption; but that, even if it was, the fact that he was an interested person, who might be actuated by a motive to shield himself from blame, involved his credibility, and so presented a question for the jury. To the same effect is O'Flaherty v. Railroad Co., 34 App. Div. 74, 54 N. Y. Supp. 96. The authority of these cases abundantly justified the submission of the question of defendant's negligence to the jury, and, considered in connection with the failure to produce the watcher on duty the afternoon of the accident, and residing in the city at the time of the trial, should preclude the possibility of a nonsuit. The case of McGrell v. Building Co., 153 N. Y. 265, 47 N. E. 305, is not controlling on the general question of defendant's liability. In that case the accident resulted from the mode of operation, and not from any defect in the appliances producing or transmitting power. Judge Haight recognized, however, in that case, as a possible rule, that (page 271, 153 N. Y., and page 307, 47 N. E.):

"As to the machinery and appliances by which an elevator is moved and controlled in its ascent and descent, an owner is bound to use the utmost care as to any defect which would be liable to occasion great danger or loss of life, and that he is in that respect subject to the same rule that applies to a railroad company in regard to its roadbed, engine, and other similar machinery."

Under the circumstances, the exclusion of the written reports of the two watchers, Mansfield and Nelson, was not reversible error. These reports were marked for identification, and are printed in the case, and it is evident that nothing contained in them could affect the determination of the question of the care with which the splice was made, or that of the credibility of the witnesses in regard to it. The damages are not excessive, and the judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur. GOODRICH, P. J., however, is of the opinion that the recovery should be reduced.