which are found expressions which might be said to point to an intent on the part of the testator to postpone the vesting of the remainder created by him with much more precision than any language which can be found in the will at bar.

Upon authority, as well as upon the plain reading of the will, we think it must be held to have been the clear intent of the testator that such of his children as should, be living at the time of his own decease and the heirs of such as might be then dead should become vested absolutely with the remainder which he created by his will, subject only to a life estate therein given to the widow; and that such remainder was not subject to be divested by the death of any one of such children during the lifetime of the widow. From this it follows that the defendant had good title, and tendered a good deed, which the plaintiff should have accepted.

The only remaining question is whether or not the title is in such doubt, although good, that plaintiff ought not to be compelled to specifically perform. The general rule is that a doubtful title should not be forced upon an objecting purchaser. Abbott v. James, 111 N. Y. 673, 19 N. E. 434. This rule does not apply with its full force where the validity of the title tendered depends upon a pure question of law, without extrinsic facts being involved. Ebling v. Dreyer, 149 N. Y. 460, 44 N. E. 155. Although the validity of the title depended upon the construction of wills, the purchasers were compelled to take in the cases of Nelson v. Russell and Hersee v. Simpson, cited herein.

Our conclusion is that the defendant's title was so marketable that the plaintiff was not justified in refusing it, and that judgment should be directed in favor of the defendant for specific performance, with costs. All concur.

(112 App. Div. 109)

WEIR v. UNION RY. CO. OF NEW YORK CITY.

(Supreme Court, Appellate Division, First Department. April 6, 1906.)

1. CARRIERS—INJURY TO PASSENGER—ACTIONS—RES IPSA LOQUITUR.

The maxim res ipsa loquitur is applicable to a case where a passenger in a street car is injured by the fall of a device used for registering fares.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 1290.]

2. SAME—EVIDENCE—SUFFICIENCY.

In an action against a carrier for injuries to a passenger owing to the fall of a device used for registering fares, evidence considered, and held sufficient to warrant a finding that there had not been proper inspection on the part of the carrier.

3. TRIAL—INSTRUCTIONS—CREDIBILITY OF WITNESSES.

In an action for injuries to a passenger owing to the fall of a device used for registering fares, the court instructed that defendant's witnesses had testified that the fall was caused by the breaking of an iron prong owing to a flaw therein which could not have been seen until after the iron had been broken, and that it was for the jury to pass upon the credibility of such witnesses, and say whether their testimony should be accepted, and that, if the evidence appeared to be a satisfactory explanation, there should be a verdict for defendant. Held, that the instruction was a proper one on the credibility of defendant's witnesses, and it was not error for the court not to have told the jury explicitly that they should find a verdict for defendant if they believed its witnesses.

Appeal from Trial Term, New York County.

Action by Winant W. Weir against the Union Railway Company of New York City. From an order granting defendant's motion to set aside a verdict in favor of plaintiff, plaintiff appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and HOUGHTON, JJ.

J. S. Ross, for appellant.

B. H. Ames, for respondent.

PATTERSON, J. On the trial of this action, which was brought to recover damages for personal injuries alleged to have been sustained by the plaintiff through the negligence of the defendant, the former obtained a verdict, and after its rendition and before the entry of judgment the defendant moved to set it aside. It appears from the clerk's minutes of the trial that that motion was denied. Thereupon judgment was entered on the verdict. Subsequently the justice presiding at the trial reconsidered such denial, and granted the motion, the verdict was set aside, a new trial was granted, and the judgment entered was vacated. From the order so directing, the plaintiff appeals. The reasons of the learned trial judge for setting aside the verdict are contained in an opinion printed in the record. He considered that his instructions to the jury were in some repects insufficient, and that the verdict was against the weight of evidence.

Reluctant as we are to interfere with the disposition made by a trial judge of such a motion as this, yet we are forced to the conclusion in the present case that the instructions given by the justice to the jury were full, adequate, and correct, and that the verdict was not against the weight of evidence in the view which the jury were authorized to, and evidently did, take of that evidence. A plaintiff in an action to recover damages for personal injuries has an interest in a verdict obtained by him in the nature of a property right (Wood v. Phillips, 11 Abb. Prac. [N. S.] 2; Carr v. Rischer, 119 N. Y. 125, 23 N. E. 296); and he should not be deprived of that right unless the verdict is set aside for good and substantial reasons which compel that course to be pursued. The material facts connected with the accident from which the plaintiff suffered personal injuries are, in brief, the following: He was a passenger on a car belonging to and operated by the defendant corporation. In that car was an apparatus used for registering fares collected from passengers. It was attached to the car by brackets, and at the top was held in position by a prong about two inches long. That prong was attached to the car, and if the apparatus, which is called in the record both "register" and "clock," is taken away, the prong remains in the car as a permanent attachment. While the plaintiff was in the car, this apparatus fell without apparent cause, and struck the plaintiff on his foot, causing him some injury. The learned trial judge ruled that the case was controlled by the maxim res ipsa loquitur, and that the obligation rested upon the defendant to explain the accident. Without discussing that subject at length, it is sufficient to say that we are not disposed to differ with the view the trial judge entertained concerning it. The defendant undertook to explain the

cause of the accident, and it was attributed to a defect in the casting of the prong, in which it was claimed (and there was some evidence to substantiate that theory) that there existed an air bubble or blister. · Proof was offered that the car and everything connected with it was regularly and frequently inspected by servants of the defendant who were charged with the performance of that duty, and the attempt was made, also, to prove that the defect in the prong could not have been detected by inspection. In his charge the learned judge stated to the jury what the duty of inspection was. He told them that it was incumbent upon the defendant to make a proper inspection of its cars and the instrumentalities connected therewith for the safety of the traveling public. He said:

"The defendant, however, contends that this was such a defect as would not have been disclosed by a proper inspection, and that is a question which must address itself to you. As men of intelligence and as men of affairs, you must use your good judgment in passing upon that point. If there were a latent, inherent defect which would not have been manifest under proper inspection, and the defendant used care to furnish proper safeguards for the traveling public, and in the exercise of proper care did nothing which it should not have done, or omitted nothing which it should have done, then, of course, this accident is one which it is not responsible for, and your verdict should be for the defendant."

Thus it was left to the jury to say whether a proper inspection had been made, or whether the defendant exercised proper care in inspecting. The court was not asked to charge the jury what degree of care should have been exercised, or to define more specifically what was meant by a proper inspection. It was for the jury to say what caused the fall of the register, and whether the defendant had sufficiently explained it by showing that it was the breaking of the prong that caused the apparatus to fall, and, if it were, whether that prong had been properly inspected. In setting aside the verdict, the trial judge considered that, if the verdict were based upon the insufficiency of the explanation, it was not only against the weight of evidence, but it was without any evidence whatever to support it. As we read the testimony of the witnesses, there was abundant proof upon which the jury were authorized to reject the explanation. They were called upon to determine whether the duty of inspection had been performed. There is testimony to the effect that the car was inspected, and that some of the immediate surroundings and attachments of the register were also inspected; but there is no evidence to show that the prong, which was a permanent attachment of the car, had ever been inspected, or its sufficiency to support or aid in support of the register was ever tested, unless it may have been by one of the servants of the defendant placing his whole weight upon the apparatus, and thus attempting to see what strain it would bear. But, even if that were done, there is evidence that, had the defect existed in the prong as claimed by the defendant, the weight applied to it in the manner indicated would have caused it to snap and break. There was also testimony as to the insufficiency of the inspection of the prong if it were inspected, because the simple method of striking it with a hammer would have disclosed the existence of the air bubble or blister, and it was not tested in that

manner.   The defendant sought to exonerate itself from responsibility by showing adequate inspection, and the existence of a defect which could not have been detected by reasonable and proper inspection. Under the condition of the evidence, the jury were justified in finding that there had not been reasonable and proper inspection of the prong, and that the defendant had not satisfactorily explained the accident. The trial judge was of the impression that, if the cast-iron prong had a latent defect described by the witness, it was manifest that no kind of inspection, however careful, could have revealed the same.   But it appears in evidence that it would have been revealed had the prong been tested by a hammer.

As stated before, the learned trial judge also considered that he did not charge the jury with sufficient distinctness, referring to his remarks as to the credibility of the defendant's witnesses, and he was of the opinion that he should have given them more definite instructions upon that subject, and that he should have told the jury in so many words that they should find a verdict for the defendant if they believed its witnesses.   He did charge the jury, not in those words, but very clearly and unmistakably to the same effect.   He told them that witnesses had been called by the defendant for the purpose of explaining the cause of the accident; that those witnesses testified that it was caused by the breaking of the cast-iron prong which projected from the frame of the car, and to which the register was attached; that the breaking was caused "through a flaw or an air blister in the cast-iron projection"; that that was something that could not have been seen until after the iron had been broken; that it was for the jury to pass upon the credibility of those witnesses who are in the employ of the defendant, and to say whether or not their testimony shall be accepted by them in its entirety. He said:

"All of the witnesses, as I recall them, except Weiler, are now in the employ of the defendant, and Weiler was in such employ at the time of the accident. You are to weigh their evidence and pass upon their credibility with reference to that fact, and, if their evidence appeals to you as a satisfactory explanation of this accident, and you are satisfied that there was no negligence on the part of the defendant, your verdict should be for the defendant."

Thus was submitted to the jury the credibility of the defendants' witnesses, and they were instructed to base their judgment and determination upon the credibility of such witnesses.   We do not see how the jury could have been better instructed upon this subject.   The meaning of the court is clearly expressed in plain language.

It is intimated in the opinion we have been considering that there may have been an error in the charge respecting the plaintiff's right to recover for loss of profits in his business, but the learned judge did not pass upon that question.   It is sufficient to say now that evidence was given of the nature of the plaintiff's business, and of what his expenses were, and in that evidence the only expense or outlay of the plaintiff in conducting his business is stated.   It is also intimated in the opinion that the conduct of such business involved the question of the rental of premises and use of capital and the employment of men.   The expenses for the employment of men were testified to, the outlay of capital was also testified to, and it appeared that there were no other expenses

to which the plaintiff was put in "running" the oyster stand at which he conducted his business. Outside of those expenditures, everything else he received was profit. The charge to the jury concerning the loss of profits was very guarded, and, under the proof, was not erroneous.

The order appealed from should be reversed, and the verdict reinstated, with costs of this appeal. All concur.

---

(112 App. Div. 262)

### SCALLON et al. v. MANHATTAN RY. CO. et al.

(Supreme Court, Appellate Division, First Department. April 6, 1906.)

EMINENT DOMAIN—DAMAGES—APPEAL—REVIEW—HARMLESS ERROR—FINDINGS.

Appeal from Special Term, New York County.

