BATCH, APPELLANT, *v.* HELENA LIGHT & RAILWAY CO.
ET AL., RESPONDENTS.

(No. 3,659.)

(Submitted May 11, 1916.  Decided July 17, 1916.)

[159 Pac. 411.]

*Personal Injuries—Carrier and Passenger—Street Railways—Inspection of Appliances — Duty of Carrier — Appeal and Error—Theory of Case.*

Personal Injuries—Theory of Case—Appeal.
1.   Where a personal injury case against a carrier was tried as though the latter's duty to provide safe conveyances was governed by the common law and without regard to section 5301, Revised Codes, it will be determined on appeal under the same theory.

Same—Street Railways—Liability of Carrier—Erroneous Instructions.
2.   Instructions in an action by a passenger against a street railway company tried under the common law, that the carrier's responsibility for personal injuries due to defective appliances was confined to cases where such defects were visible or of long standing, and that responsibility could be avoided by a showing that some sort of an inspection had been made by a person competent to make a proper one, were erroneous, the carrier under the common-law rule being liable for defects which a most rigid examination might disclose, and for the slightest negligence in this respect.

Same—Liability of Carrier—Correct Statement of Law.
3.   Where the jury were correctly instructed that proof of the accident to plaintiff caused by the breaking of a strap while the conductor was in the act of registering a fare by means of it, cast upon defendant company the burden of its exoneration; that it owed to plaintiff the highest degree of care; that such degree of care was required in the inspection of its equipment, including the strap, and keeping it in repair, and to anticipate all such results as might reasonably be expected in view of the conditions under which the equipment might be used, error in other instructions touching the liability of defendant was rendered harmless.

Same—Inspection of Appliances—Insufficiency.
4.   Inspection of a strap used by the conductor in a street-car for registering fares, made by looking at it without subjecting it to an actual test, was insufficient to relieve the railway company from liability for injuries caused to plaintiff by the breaking of the strap while being used by the conductor, and his consequent fall upon plaintiff.

MR. JUSTICE HOLLOWAY dissenting.

[Liability of carrier to passenger for injury caused by fall of window of car, see note in Ann. Cas. 1912B, 850.]

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by Mary Batch against the Helena Light & Railway Company and another. From a judgment for defendant, and an order denying a motion for new trial, plaintiff appeals. Reversed and remanded.

*Messrs. E. A. & F. E. Carleton,* for Appellant, submitted a brief; *Mr. E. A. Carleton* argued the cause orally.

Plaintiff having proven by competent testimony the happening of the accident, the burden was then upon the defendants to prove that they had done everything which the law required them to do to avoid the accident. This they failed to do. (*Emerson* v. *Butte Electric Ry. Co.,* 46 Mont. 454, 458, 129 Pac. 319; *Bond* v. *United Railroads of San Francisco,* 24 Cal. App. 157, 140 Pac. 982, 985.) "A railroad company is bound to know the effect of time and weather upon its appliances, and it should, by proper inspection, and timely changes and renewals, keep them safe." (1 Nellis on Street Railways, sec. 290; *Leonard* v. *Brooklyn Heights R. Co.,* 57 App. Div. 125, 67 N. Y. Supp. 985; *Smith* v. *Metropolitan Street Ry. Co.,* 59 App. Div. 60, 69 N. Y. Supp. 176; *O'Flaherty* v. *Nassau Electric Ry. Co.,* 34 App. Div. 74, 54 N. Y. Supp. 96; *Weir* v. *Union Ry. Co.,* 112 App. Div. 109, 98 N. Y. Supp. 268; *Hegeman* v. *Western R. R. Corp.,* 13 N. Y. 925, 64 Am. Dec. 517.) Under the foregoing authorities, the evidence is insufficient to sustain the verdict and judgment rendered thereon, for the reason that there is no evidence whatever that the appliance in question was ever inspected, other than by a mere visual examination. Such an inspection is, as a matter of law, insufficient. (*Leveret* v. *Shreveport Belt Ry. Co.,* 110 La. 399, 34 South. 579; *Williams* v. *Louisiana Electric Light etc. Co.,* 43 La. Ann. 295, 300, 8 South. 938; *Alden* v. *New York Central R. R. Co.,* 26 N. Y. 102, 82 Am. Dec. 401; *Siemsen* v. *Oakland S. L. & H. Electric Ry.,* 134 Cal. 494, 66 Pac. 672; *Philadelphia etc. R. R. Co.* v. *Derby,* 14 How. (U. S.) 486, 14 L. Ed. 502; *New Jersey R. R. Co.* v. *Kennard,* 21 Pa. St. 203; *Meier* v. *Pennsylvania R. R. Co.,* 64 Pa. St. 225, 3 Am. Rep. 581; *Laing* v. *Colder,* 8 Pa. St. 479, 482,

49 Am. Dec. 533; *Spellman* v. *Lincoln Rapid Transit Co.,* 36 Neb. 890, 38 Am. St. Rep. 753, 20 L. R. A. 316, 55 N. W. 270; *Dougherty* v. *Missouri R. R. Co.,* 97 Mo. 647, 661, 8 S. W. 900, 11 S. W. 251; *Palmer* v. *President etc. of D. & H. Canal Co.,* 120 N. Y. 170, 17 Am. St. Rep. 629, 24 N. E. 302.)

*Mr. Odell W. McConnell,* for Respondents, submitted a brief, and argued the cause orally.

The principles of law enunciated in instructions 9, 12 and 13 can be found almost *verbatim* in the text-books and adjudicated cases as approved instructions.   (36 Cyc. 1501; *Miller* v. *United Ry. & Electric Co.,* 108 Md. 84, 17 L. R. A. (n. s.) 978, 69 Atl. 636; *Casper* v. *Drydock etc. R. Co.,* 23 App. Div. 451, 48 N. Y. Supp. 352; *Griffin* v. *Interurban Street R. R. Co.,* 46 Misc. Rep. 328, 94 N. Y. Supp. 854; *Kelly* v. *Metropolitan Street Ry. Co.,* 25 Misc. Rep. 194, 54 N. Y. Supp. 173; *Houston City Street Ry. Co.* v. *Autrey,* 4 Tex. Civ. 635, 23 S. W. 817; 2 Brickwood's Sackett on Instructions to Juries, sec. 2030; *Brod* v. *St. Louis Transit Co.,* 115 Mo. App. 202, 91 S. W. 993.)

Instruction 13 held the defendants to the highest degree of care, and told the jury that before they could find a verdict in favor of the defendants they must find that the injury was caused without any negligence on the part of the defendants. This was the gravamen of the case, for unless the plaintiff proved negligence on the part of the defendants, she could not expect to recover.   That this instruction correctly states the law, see the following cases: *Southern Car & Foundry Co.* v. *Jennings,* 137 Ala. 247, 34 South. 1002; *Louisville & N. Ry. Co.* v. *Campbell,* 97 Ala. 147, 12 South. 574; *Louisville & N. Ry. Co.* v. *Allen's Admr.,* 78 Ala. 494; 2 Brickwood's Sackett on Instructions, secs. 1409, 1508.

Counsel cites the case of *Weir* v. *Union Ry. Co.,* 112 App. Div. 109, 98 N. Y. Supp. 268, as being on all-fours with this case. In that case the doctrine of *res ipsa loquitur* was held applicable, because the passenger was injured by the falling of a device used in registering fares.   In the case at bar the device for register-

ing fares did not fall, nor was there any defect therein, nor was any shown. In the *Weir Case* the apparatus fell without apparent cause. Not so in the case at bar. The reason that the strap pulled out was because the conductor tugged and pulled at it three or four times. There is no evidence that the register strap was in such a condition before the accident that it was likely to pull out, and in the absence of evidence that such a condition existed before the accident, the company is not chargeable with negligence, and the maxim *res ipsa loquitur* does not apply. (*Millie* v. *Manhattan Ry. Co.*, 10 Misc. Rep. 734, 31 N. Y. Supp. 801.)

MR. JUSTICE SANNER delivered the opinion of the court.

The plaintiff by this action sought damages for personal injuries which she claims to have sustained while traveling as a passenger for hire on one of the street-cars of the defendant Helena Light & Railway Company bound for Kenwood, a suburb of this city. The undisputed facts are: That at the end of the car and just under the roof there was a device for registering fares, worked by means of a bar extending the length of the car, to which, at intervals, straps were attached in pairs, one of such straps being on one side of the bar for tickets, and one on the other side for cash fares. These straps were connected to the bar by means of short, projecting metal levers, through a slit, each strap being riveted so as to form a loop. That while the car approached the curve at Lawrence Street and Harrison Avenue, the defendant King as conductor was registering fares, and as it entered said curve he pulled one of the ticket straps, which gave way, causing him to fall against and upon the plaintiff. Just how the strap gave way, with what violence the conductor fell, and whether as the result the plaintiff sustained any serious injury, are subjects of conflicting evidence. The verdict was for the defendants, and plaintiff has appealed from the judgment entered in consequence, as well as from an order denying her a new trial. The errors assigned comprehend four

rulings upon evidence, three given instructions, and the refusal of a new trial.

1. While the complaint contains several charges of negligence, reliance was placed upon negligence in permitting the registry strap to be and become deficient. As three of the assigned rulings upon evidence relate to the condition of the car in other respects, and as the fourth was waived upon oral argument before us, we find nothing prejudicial in any of these rulings.

2. The position of the defendants was and is that they cannot [1, 2] be held to answer for the plaintiff's injuries, if she sustained any, because the company had performed its full duty of care toward her by causing the car in question to be inspected within a few hours prior to the accident, which inspection failed to reveal any defect in the equipment. To enforce this view upon the jury, it offered, and the court gave, three instructions numbered 9, 12 and 13, of which the plaintiff here complains. It is perfectly clear that under any possible interpretation of section 5301 of our Codes, these instructions, as well as the view they were offered to express, were erroneous; but as this section was not invoked by either party at the trial and the cause was presented as though governed by the common law, it must be judged here in accordance with that theory. So judged, we think instructions 9 and 12 are still open to criticism, and, if they stood alone, might command a reversal. The responsibility of a street railway company to its passengers for injuries due to defective appliances is not even at the common law confined to cases where such defects are visible or of long standing; nor can it be avoided on the mere showing that some sort of an inspection was made by a person competent to make a proper one. Such responsibility is covered by the rule—as old as the stagecoach and applicable alike to all carriers of passengers—found in the text of Story on Bailments, sections 592, 601a: "If there is any defect in the original construction of a stage-coach, as, for example, in the axletree, although the defect be out of sight and not discoverable upon a mere ordinary examination, yet if

the defect might be discovered by a more minute examination, and any damage is occasioned to a passenger thereby, the coach proprietors are answerable therefor.  The same rule will apply to any other latent defect, which might be discovered by a more minute examination and more exact diligence.  *  *  *  Where any damage or injury happens to the passengers by the breaking down or overturning of the coach or by any other accident occurring on the road, the presumption *prima facie* is that it occurred by the negligence of the coachman; and the *onus probandi* is on the proprietors of the coach, to establish that there has been no negligence whatsoever, and that the damage or injury has been occasioned by inevitable casualty, or by some cause which human care and foresight could not prevent; for the law will, in tenderness to human life and human limbs, hold the proprietors liable for the slightest negligence, and will compel them to repel, by satisfactory proof, every imputation thereof.''

But these instructions do not stand alone; and when they are [3] considered with the other instructions touching the measure of defendants' duty, we are impelled to the view that the jury could not have misunderstood.  In the plainest language they were told that proof of the accident cast upon the company the burden of its own exoneration; that it owed to the plaintiff as a passenger the highest degree of care; that such degree of care was required in the inspection of its equipment, including the register strap and involved the duty to keep its equipment in repair, and to anticipate all such results as might reasonably be expected in view of the conditions under which the equipment might be used.  As this correctly expresses the common law of the subject, we are not disposed to order a retrial because of error in the instructions.

3. The case was submitted to the jury as though the evidence [4] touching the inspection was sufficient, if true, to rebut the presumption of negligence which arose on proof of the accident. This was error.  So far as the register strap is concerned, the only suggestion of an inspection is made by Vickery, who says:

Direct examination: "That car went out about 12:30 on the 30th in good condition.   Q. Were the straps in good condition? A. As far as I could learn and see."

Cross-examination: "I went through to see if any straps were broken out, or missing, or bad straps.   I didn't go around and jerk on the straps to see if there was any weak straps in there. I looked at the bell cord and turned the lights on.   That was all I did in inspecting the straps.   Q. Looked at them?   A. Yes, sir."

Redirect: "I worked on and inspected car 4 on April 30, 1913, the day of the accident—in the morning some time.   I was inspecting the controllers, and repaired the controllers, and inspected the car in general at that time.   Q. Were you in the interior of the car where the straps were?   A. Yes, sir.   Q. Did you inspect the straps in that particular?   A. Yes, sir.   Q. Did you find anything wrong with the car?   A. No, sir."

Recross-examination: "All of my inspection on the 30th of April was on the controllers, inside of the car.   As I remember it my entire inspection was confined to that.   *  *  *  I don't remember what I did to the controllers.   I remember looking at the brushes and the motor through the car in general.   I don't remember anything else.   I have told you all that was ever done on this occasion on this car."

Whether the strap broke below the rivet or pulled through the rivet is the subject of some contention; but it is of little consequence.   The important fact is that it gave way, caused the conductor to lose his balance and to fall upon the plaintiff, and Vickery, it will be observed, does not intimate that weakened defects, short of actual breakage, could have been discovered by any such inspection as he gave the straps, or could not have been discovered by submitting them to scrutiny or to some practicable test.   His inspection as he describes it may have been merely a sweeping glance.   The safety and comfort of people who pay for their transportation by a common carrier require something more than this, and something more than this was practicable.   In use the straps were to be jerked with suffi-

cient force to work the register, and an obvious test of their efficiency for that purpose was to put them through that operation. That such a test probably would, that even a close and careful scrutiny might have revealed the weakness is to be gathered from the defendants' own case, for King, the conductor in whose hands the strap gave way, says:

"I got hold of this strap and I rang it up in the usual manner, and so far as I could tell the rivet pulled out and the strap pulled loose some way. I don't know just how, and I lost my balance and fell over toward the side of the car. * * * I could not say that I pulled the strap more than once. * * * I did not use any more force than I ordinarily would in ringing up fares. * * * I have no recollection at all of how many times I pulled. * * * I don't remember anything about the register not working. * * * I don't recall that I pulled it once and it didn't work and got hold of it again and gave it a sudden jerk. * * * I am not positive whether the strap broke in two or whether it pulled off in the rivet." We have quoted the rule at the common law as stated by Story, and we subjoin a version of the same rule as applied to street railways by a modern authority: "While street railroads, as common carriers, are not insurers of the absolute safety of their passengers and do not insure them against all hazards incident to their transportation, they are required to exercise, through their servants, a very high degree of care, skill, diligence and foresight, such as should be exercised by very careful and skillful railroad employees, to avoid injury and loss of life to those whom they undertake to carry as passengers, and for injuries resulting from a failure of duty in this regard they are liable. * * * The inspection of its cars and appliances, roadbed and machinery must be such as, in the judgment of those who understand the subject, will be sufficient to secure, or such as experience has shown to be sufficient to secure, the safety of its passengers. Where an accident happens to a passenger by the breaking of one of the railway company's appliances, the burden is upon it to show affirmatively a condition of things which

would exonerate it from liability.'' (1 Nellis on Street Railways, secs. 274, 290.) Under this rule, the defendants' showing of care by reason of inspection was insufficient as a matter of law. (See *Weir* v. *Union Ry. Co.*, 112 App. Div. 109, 98 N. Y. Supp. 268; *Leonard* v. *Brooklyn Heights Ry. Co.*, 57 App. Div. 125, 67 N. Y. Supp. 985; *Smith* v. *Metropolitan St. Ry. Co.*, 59 App. Div. 60, 69 N. Y. Supp. 176; *Volkmar* v. *Manhattan Ry. Co.*, 134 N. Y. 418, 30 Am. St. Rep. 678, 31 N. E. 870; *Treadwell* v. *Whittier*, 80 Cal. 574, 585, 13 Am. St. Rep. 175, 5 L. R. A. 498, 22 Pac. 266; *Texas etc. Ry. Co.* v. *Hamilton*, 66 Tex. 92, 17 S. W. 406; *Palmer* v. *President etc. of D. & H. C. Co.*, 120 N. Y. 170, 17 Am. St. Rep. 629, 24 N. E. 302; *Gerlach* v. *Detroit United Ry.*, 171 Mich. 474, 137 N. W. 256; *Texas etc. Ry. Co.* v. *Allen*, 114 Fed. 177, 52 C. C. A. 133.)

What importance this aspect of the case may have assumed in the deliberations of the jury we can only infer from the fact that the evidence and the instructions commanded a verdict for the plaintiff in some amount, unless the defendants, by reason of the so-called inspection, had exonerated themselves from all blame. It is true we may question the extent of plaintiff's injuries attributable to the accident; but that is a pure gratuity, for there was ample evidence to show substantial damage, as there was sufficient to warrant the view that the damage was only nominal. We may not upon this record assert that the correct result was reached because of our doubt upon the question of damages.

According to the theory on which the case was tried, the defendant King was not at fault, because he had nothing to do with the defective condition of the strap. So far as he is concerned, the judgment must be affirmed; but as to the other defendants, the judgment and order appealed from are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE HOLLOWAY: I dissent. Assuming that we are bound by the theory of the case adopted in the trial court and that such theory was erroneous, I am unable to subscribe to the doctrine announced by the majority which furnishes the only ground for a reversal of the judgment.

In negligence cases, inspection is never required for its own sake. It is but a means to an end, and whenever it appears that reasonable inspection would not disclose the latent defect which is ultimately responsible for an injury, a failure to make such inspection does not constitute negligence.

There cannot be any dispute upon this record that the only purpose the strap in question was designed to serve was to operate the lever which in turn caused the registering device to record the fare. It was not intended to sustain the weight of a man or to resist any strain which might be put upon it. Since its purpose was to operate the lever, the utmost that could have been required of an inspector was that he should test it by moving the lever, and had he done so, it would have responded to the test for all that appears from this record, and the company would have been acquitted of the charge of negligence under the theory adopted by the plaintiff. There is not any contention made by plaintiff that the strap broke by reason of the application of such force as ordinarily worked the lever. Plaintiff herself and her witnesses Donaldson and Reeves testified that when the conductor sought to register a fare, something apparently was wrong with the mechanism of the registering device, for it failed to work, and the conductor then gave the strap a second hard pull or jerk, which caused it to give way. If then, according to plaintiff's own theory, the strap broke only because it was subjected to more than the ordinary force, it cannot be said as a matter of law that a proper inspection would have disclosed the defect, if any, in the strap; on the contrary, the evidence tends strongly to negative the idea that any reasonable inspection would have been productive of result.

I am unable to agree with the majority that what the witness Vickery did was not any inspection at all. It was for the jury to say, from all the facts and circumstances, whether an inspection was made, and, if not made, whether the failure to make one, under the circumstances, constituted negligence.

Assuming, further, that plaintiff was entitled to nominal damages, the failure of the jury to make such award is not a ground for a new trial. An appellate court will not reverse a judgment in order that nominal damages may be recovered. *De minimis non curat lex.*

If upon the entire case as presented the correct result was reached, a new trial should not be granted. In denying a new trial the lower court must have passed upon the question of the sufficiency of the evidence to warrant a verdict for substantial damages. If in the opinion of that court such damages should not have been awarded, its order denying a new trial should be upheld, for certainly this court cannot say that the evidence presents a case calling for more than nominal damages.