[Civ. No. 739.   Fifth Dist.   Aug. 25, 1967.]

BEVERLY SUSAN GRIFFIN et al., Plaintiffs and Appellants, v. RENO SARDELLA et al., Defendants and Respondents.

938

Lipian, Horwitz & Kornfield and Irving J. Kornfield for Plaintiffs and Appellants.

Miller, Van Dorn, Hughes & O'Connor and Richard H. Mc-Connell for Defendants and Respondents.

GARGANO, J. — Plaintiffs Beverly Susan Griffin and Henry Doyle Griffin, along with two other couples, hired fully equipped riding horses and packing mules together with a guide for a "pack in" trip to a camping area in the Sierra Mountains. The group left respondents' packing station Friday, September 18, 1964, and arrived at the camp site in the mountains after a ride of approximately seven and one-half hours. Arrangements were then made for the guide, Jim Hawksworth, to return the following Monday with the horses to pack the group back down to the lower level. Accordingly, Hawksworth and his wife returned during the morning of September 21, and preparations were made for the return trip. When these preparations were completed plaintiffs and their companions started back toward the packing station, leaving Hawksworth and his wife behind to pick up the equipment and clean up the camp. It was agreed that the guide would catch up with the group after he had finished cleaning the camp. Approximately 15 minutes later, while descending a rocky slope, Mrs. Griffin fell from her horse and struck the ground, sustaining a severe fracture of the left wrist.

During the trial the court instructed the jury on the doctrine of res ipsa loquitor and informed the jury that it was its function to determine whether the doctrine was applicable (the court gave BAJI No. 206-A [Rev.]). However, notwithstanding this instruction, the jury returned a verdict for the defendants. Plaintiffs moved for a new trial but their motion was denied. Judgment was entered on the verdict and this appeal followed.

It is of course the rule that the doctrine of res ipsa loquitor does not shift the burden of proof to the defendant, and the plaintiff must still prove his case by a preponderance of the evidence (Witkin, Cal. Evidence, (2d ed 1966) § 264, p. 226). However, it has long been the rule of this state that once a case has been made for the application of the doctrine the defendant must produce "evidence sufficient to meet the inference of negligence by offsetting or balancing it" (*Hardin* v. *San Jose City Lines, Inc.*, 41 Cal.2d 432, 437 [260 P.2d 63] ; but see Evid. Code, § 604 for the present rule). In fact, the Supreme Court in *Dierman* v. *Providence Hospital*, 31 Cal.2d 290, 295 [188 P.2d 12], stated that a defendant must make a showing " '. . . either (1) of a satisfactory explanation of the accident, that is, an affirmative showing of a definite cause for the accident, in which cause no

element of negligence on the part of the defendant inheres, or (2) of such care in all possible respects as necessarily to lead to the conclusion that the accident could not have happened from want of care, but must have been due to some unpreventable cause, although the exact cause is unknown. In the latter case, inasmuch as the process of reasoning is one of exclusion, the care shown must be satisfactory in the sense that it covers all causes which due care on the part of the defendant might have prevented.' ''

With these principles in mind, appellants' main contention for reversal is that the defendants did not produce substantial evidence to refute the inference of negligence which was raised by the doctrine of res ipsa loquitor. Succinctly, they contend that the evidence established beyond any doubt that the accident occurred because the cinch knot in Mrs. Griffin's saddle became loose, and that this would not have happened if it had been properly fastened in the first place. They conclude that defendants failed to produce a satisfactory explanation of the cause in which no negligence on their part inhered. In fact, they assert that the guide simply testified that he checked the cinch without disclosing the nature of his inspection, and since it is possible to check a cinch without looking at the cinch knot the respondents failed to produce any substantial evidence sufficient to refute the inference of negligence.

According to the leading California Supreme Court decision in *Ybarra* v. *Spangard,* 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258], before the doctrine of res ipsa loquitor is applicable three conditions must be established by the evidence. These conditions are:

1. The accident must be of a kind which ordinarily does not occur in the absence of someone's negligence;

2. It must be caused by an agency or instrumentality within the exclusive control of the defendant; and

3. It must not have been due to any voluntary action or contribution on the part of plaintiff.

Consequently, it is manifest that the crucial question is not whether defendants produced evidence sufficient to meet the inference of negligence by offsetting and balancing it as plaintiffs assert. Rather, it is whether under the evidence the doctrine of res ipsa loquitor was established as a matter of law. If so, an inference of negligence on the part of the defendants also arose as a matter of law, and plaintiffs are entitled to a new trial if the defendants failed to meet this

inference by producing substantial evidence to offset or balance it. On the other hand, the existence of the three conditions making the doctrine applicable is normally a question of fact for the jury to decide (*Hardin* v. *San Jose City Lines, Inc., supra,* 41 Cal.2d 432, 436). Thus, if the court correctly instructed the jury that it was its function to determine whether the doctrine was applicable, an inference of negligence on the part of the defendants did not arise as a matter of law, and we must uphold the jury's verdict if there is any substantial evidence in support thereof.[1]

We conclude that there was substantial evidence for the jury to find that the doctrine of res ipsa loquitor was not applicable in the instant case, and that the accident to Mrs. Griffin was not caused by the negligence of the defendants. In the first place, there was substantial evidence that the accident was not of the kind which ordinarily does not occur in the absence of someone's negligence. It is self-evident that horseback riding (particularly on mountainous terrain) is not entirely free of hazard, and Mrs. Griffin testified that she had done little riding in the previous four years. Moreover, Mr. Sardella enumerated several potential causes for falls from horses such as a horse frightened by bees, snakes or deer; a horse falling on ice; a rider leaning too far forward while going downhill. In the second place, there is substantial evidence for the jury to have found that the accident was not caused by an agency or instrumentality within the exclusive control of the defendants (by the saddle slipping as the result of a loose cinch knot). Mr. Hawksworth, an experienced horseman and packer, testified that he personally saddled Mrs. Griffin's horse at defendants' packing station on the morning of September 21, and that before leaving he cinched the saddle even tighter so as to take up any slack. He added that after arriving at the camp site he checked the cinch again as he removed the stirrups from their position over the seat (a position which exposes the cinch to his view), and that the cinch was tighter than he would have made it for himself. Finally, he stated that he observed Mrs. Griffin mount three

---

[1]The court gave BAJI No. 206-A (Rev.) which informs the jury that it is its function to determine the existence of the three essential conditions before the doctrine applies. Significantly, this instruction which is given only when the evidence does not establish the application of the doctrine of res ipsa loquitur as a matter of law was given at the request of the plaintiffs. Clearly, the plaintiffs did not believe that the evidence had established the application of the doctrine as a matter of law when they requested the instruction.

times, and he indicated that the saddle would have slipped at that time if the cinch knot had been loose. He also said that the knot could not have worked loose during the period that followed before Mrs. Griffin's fall. In the third place, there was substantial evidence for the jury to find that the accident was due to some voluntary action or contribution on the part of Mrs. Griffin. Mrs. Griffin fell while descending a rocky slope. Hawksworth testified (corroborated by Sardella) that he noticed that Mrs. Griffin tended to lean forward when riding downhill, and that in his opinion if she were leaning forward when the horse made a misstep, causing her to lose her balance and grab the saddle horn, her weight could pull the saddle over even though it was properly cinched. Moreover, during the ride to the camp site Mrs. Griffin had been observed riding with one foot out of the stirrup and over the seat. In such position Mrs. Griffin could have easily fallen suddenly without warning while descending the rocky downslope.

In support of their position that the evidence established beyond any doubt that the accident occurred because the cinch knot in Mrs. Griffin's saddle became loose, plaintiffs rely on their own testimony and on the testimony of their companion, Tom Foster. Furthermore, they contend that this testimony clearly indicates that the testimony of the guide Hawksworth is so inherently improbable that it should be disregarded. Mrs. Griffin testified that prior to the accident she was riding properly with her feet in the stirrups, and that she fell suddenly without warning. Mr. Griffin testified that upon hearing his wife scream he looked back and saw her fall to the ground as the saddle slipped sideways on the horse (the other members of the group saw nothing as they had rounded a bend and the view was blocked). He also testified that after the fall he observed that the cinch knot was still tied but extremely loose. This latter testimony was corroborated by Mr. Foster who added that he was able to replace the saddle on top of the horse without untying the knot.

Admittedly, plaintiffs' arguments that Mrs. Griffin fell when her saddle slipped, and that this in turn was caused by a loose cinch knot, are persuasive. However, their arguments apparently did not convince the jury who were the sole and exclusive judges of the evidence and the credibility of the witnesses. Mr. and Mrs. Griffin are parties to the action and are interested in the result. Tom Foster was a member of their group and a friend of the Griffins. Moreover, he testified that

he was nervous and excited when he made his observations. Consequently, the jury was entitled to reject all or any part of their testimony and to accept contradictory testimony or contradictory inferences supported by other evidence.

It is elementary that an appellate court does not weigh or resolve conflicts in the evidence, nor does it judge the credibility of witnesses. To the contrary, if any substantial evidence, contradicted or uncontradicted, or any reasonable inferences therefrom will support the jury verdict, it must be upheld (*Berniker* v. *Berniker*, 30 Cal.2d 439 [182 P.2d 557]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183]). In fact, all of the evidence most favorable to the respondents must be accepted as true, and that unfavorable must be discarded as not having sufficient veracity to be accepted by the jury (*Estate of Teel*, 25 Cal.2d 520 [154 P.2d 384]).

Plaintiffs' remaining contention for reversal is that the court erroneously refused to instruct the jury on the use of extreme caution. This refused instruction (BAJI No. 102-D as modified by plaintiffs) read as follows: "Because of the great danger involved in the [saddling of horses for others to ride,] a person of ordinary prudence will exercise extreme caution when engaging in such activity."

It is interesting to note that the editors of BAJI cite *Jensen* v. *Minard*, 44 Cal.2d 325 [282 P.2d 7], *Signorelli* v. *Potter*, 43 Cal.2d 541 [275 P.2d 449], and *Lewis* v. *Bjornestad*, 111 Cal.App.2d 409 [244 P.2d 497], as the authoritative cases for BAJI 102-D entitled "specific application of duty in dangerous activity." These cases, however, are concerned with activities or the use of commodities which are in and of themselves dangerous, i.e., where the dangerous character of the commodity or activity itself requires a high degree of caution. In *Jensen* the court was referring to the discharge of firearms. *Signorelli* and *Lewis* involved inflammable gases.

We do not believe that the saddling of horses is in and of itself a dangerous activity. nor do we believe that it should be so categorized. Moreover, Mrs. Griffin was not injured while a horse was being saddled in the sense that she was injured while defendants were engaged in this activity. In fact, if Mrs. Griffin's fall was caused by a loose cinch knot as plaintiffs contend, her injury resulted from Hawskworth's failure to exercise the amount of caution which he should have exercised under the circumstances. Thus, the jury was properly

and adequately instructed when the court informed the jury: "The amount of caution required of a person in the exercise of ordinary care depends upon the danger which is apparent to him or should be apparent to a reasonably prudent person in the particular situation and circumstances involved." (BAJI No. 102-A [Rev.].)

Plaintiffs argue that at the very worst the instruction which they offered was poorly worded. Thus, relying on *Costa* v. *A. S. Upson Co.,* 215 Cal.App.2d 185 [30 Cal.Rptr. 66], they assert that since there was evidence that horseback riding is a dangerous activity, the court should have either given the instruction as proposed by the plaintiffs or corrected it accordingly. In other words, in filling in the blank space in BAJI 102-D plaintiffs selected "the saddling of horses for others to ride" as the dangerous activity referred to therein. Hence, if we understand their contention correctly, they now assert that it is "horseback riding" that is the dangerous activity and that the court under *Costa* was required to either give their badly worded instruction or to reword it accordingly.

Although we have stated that horseback riding is not without hazard we do not consider it inherently dangerous, nor do we believe that a person who is engaged in the business of hiring saddle horses for pack trips engages in a dangerous activity. In any event, in *Costa* v. *A. S. Upson Co., supra,* the court was referring to an instruction which though poorly worded correctly stated the essential elements required for its application. Logically, the court indicated that under these circumstances the trial judge is required either to give the instruction as requested or to reword it to his own satisfaction. In the instant case, however, the instruction was not poorly worded. The plaintiffs, in filling in the blank space, simply selected an activity which is not in and of itself dangerous. Hence, the instruction which they offered did not meet the essential requirements for its application. In short, the plaintiffs selected the wrong theory, and it was not the duty of the court to speculate as to what the plaintiffs may have intended, or to select some other theory. To the contrary, the instant case is more closely analogous to *Mapes* v. *Yowell,* 54 Cal.2d 231 [5 Cal.Rptr. 159, 352 P.2d 527, 87 A.L.R.2d 536], where the plaintiff had failed to fill in the blanks of a standard jury instruction, and the Supreme Court held that a party cannot complain for the failure to give a requested instruction which is incomplete or erroneous even though the

court could have made the instruction conform without much difficulty (see *Shaw* v. *Pacific Greyhound Lines,* 50 Cal.2d 153 [323 P.2d 391]).

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.