[Civ. No. 742.   Fifth Dist.   Dec. 14, 1967.]

THOMAS HALAGAN et al., Plaintiffs and Respondents, **v.** J. M. OHANESIAN et al., Defendants and Appellants.

William Kraker and Belan M. Wagner for Defendants and Appellants.

Dubsick, Helon, Manfredo & Forbes and Elliott D. Chielpegian for Plaintiffs and Respondents.

GARGANO, J.—Plaintiffs instituted this fraud action to recover $25,000 from the defendants who were engaged in the real estate brokerage and loan business in the City of Fresno. According to the plaintiffs they paid the money to the defendants for a real estate commission as the result of defendants' false representation in connection with the sale of plaintiffs' motel in Fairfield, the Solano Lodge. The court tried the cause sitting without a jury, and at the conclusion of the trial the court granted judgment in favor of the plaintiffs. The court decided, however, that the $25,000 payment was a loan brokerage fee and not a real estate commission but concluded that payment was induced by the defendants' intentionally

false representation as plaintiffs alleged in their complaint and in the bill of particulars which they furnished the defendants in connection with their second cause of action.

Plaintiffs' complaint contained two causes of action which are pertinent to this appeal. The first cause of action was for fraud and *inter alia* alleged that plaintiffs paid $25,000 to defendants in reliance upon a false representation that they (defendants) had obtained a purchaser for the Solano Lodge. The second cause of action was in common count for money had and received. Moreover, throughout the trial plaintiffs steadfastly maintained that they were induced to pay the $25,000 in reliance upon defendants' false representation that defendants had a lucrative offer to purchase the motel supported by a signed deposit receipt and check in the amount of $5,000. Plaintiffs also asserted that they detrimentally relied on this false representation by rejecting an offer from another party to buy the motel.

On the other hand, defendants not only denied plaintiffs' charge that they made a false representation in connection with the sale of the Solano Lodge, but defendants also asserted that the plaintiffs paid the $25,000 in consideration for a $55,000 loan that defendants negotiated for plaintiffs at a time when plaintiffs were on the verge of bankruptcy. Thus, defendants contend that the case was tried by plaintiffs on one theory and decided by the court on another, requiring a reversal of the judgment. In other words, if we understand defendants correctly, they simply argue that since plaintiffs' case was presented on the theory that they were fraudulently induced to pay a real estate commission they cannot recover on the theory that they were fraudulently induced to pay a loan brokerage fee even though the nature of the representation which induced the payment was the same under either theory.

Defendants' contention is devoid of merit and if carried to its logical conclusion places the premium on the label rather than the substance of the transaction. Moreover, the court did not base its judgment on a different theory than that presented by the plaintiffs. To the contrary, plaintiffs' theory for recovery, as disclosed by the pleadings and pretrial order, was for fraud in the inducement and the court granted judgment accordingly. The court simply made a finding on an ultimate fact contrary to defendants' evidence as it was free to do. Although favorable to defendants' evidence, that finding did not relieve them of liability for the fraud which the court also

found they committed. In other words, although the court believed defendants' evidence as to the nature of the payment, it also believed the plaintiffs' evidence as to the nature of the fraud which induced this payment. It is manifest that the nature of the payment (whether it was a loan fee or real estate commission) would not alter defendants' liability if the payment was intentionally induced by a false and fraudulent representation. ■ It is the rule that a court may resolve all issues in accordance with the evidence, whether presented by one side or the other, and grant judgment in accordance with any legal theory raised by the pleadings (*Crogan* v. *Metz,* 47 Cal.2d 398 [303 P.2d 1029]).

■ In any event, although the court characterized the $25,000 payment a real estate commission, the gravamen of plaintiffs' action and the real issue in the lawsuit was whether such payment was made as the result of defendants' false representation. This representation was clearly and unequivocally described in the pleadings, in the bill of particulars and in the pretrial order. Thus, defendants were fully apprised of the exact nature of plaintiffs' case against them and can hardly claim that they were surprised or inadequately prepared to meet the real issue of the lawsuit at the time of trial. As stated in *Friswold* v. *Leahy,* 15 Cal.App.2d 752, 756 [60 P.2d 151]: ''The requirement to specifically plead facts in a complaint is to apprise defendant of the circumstances upon which plaintiff relies and to prevent defendant from being taken by surprise.'' A bill of particulars and pretrial order serve the same purpose.

■ Relying on the basic and salutary principle that fraud is never presumed, defendants next contend that the court's decision is not supported by the evidence. Defendants assert that the evidence clearly indicates that plaintiffs were in desperate need of funds when they borrowed the $55,000 and that there is no substantial evidence to support the finding that they borrowed the $55,000 and paid a $25,000 loan commission in reliance upon defendants' false representation that they had a buyer for the Solano Lodge.

Defendants' arguments in support of this contention are in the main mere quarrels with the weight of the evidence and with the credibility of witnesses. ■ It is elementary that an appellate court does not weigh or resolve conflicts in the evidence nor does it judge the credibility of witnesses. Moreover, if any substantial evidence, contradicted or uncontradicted, or any reasonable inference therefrom will support the

judgment, it must be upheld. (*Berniker* v. *Berniker*, 30 Cal.2d 439 [182 P.2d 557]; *Griffin* v. *Sardella*, 253 Cal.App.2d 937 [61 Cal.Rptr. 834].)　　Thus, with these principles in mind, we are satisfied that there is ample evidence to support the trial court's findings of fact and conclusions of law that defendants were guilty of actual fraud within the purview of Civil Code section 1572. This section provides in part: "Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

"    .    .    .    .    .    .    .    .    .    .    .    .

"5. Any other act fitted to deceive."

First, the testimony of several disinterested witnesses clearly indicates that the defendants knowingly, wilfully and falsely represented that they had a lucrative offer for the Solano Lodge and that defendants made this representation in order to induce plaintiffs not to sell the motel to a prospective purchaser. For example, Mr. Don George, a real estate broker, testified that in late 1962 he presented a written proposal to purchase the Solano Lodge to the plaintiffs in the presence of defendant, Leon Ohanesian, Mr. Kirk Setrakian, Mr. Ralph Emerian and Mr. Harry Minasian. Don George stated that defendant Leon Ohanesian urged plaintiffs not to accept the offer because he had a better one from Harry Minasian. As a further example, Mr. Kirk Setrakian testified that when Leon Ohanesian stated that he had a better offer he displayed a deposit receipt and a $5,000 check which he said was signed by Harry Minasian. And Minasian testified that he never offered to purchase the Solano Lodge and he did not give defendants a signed deposit receipt or a check in the amount of $5,000. He explained that defendants' proposal was that he join them in a joint venture to purchase the Solano Lodge, contingent upon the sale of his (Minasian's) own motel.

Second, there is direct and circumstantial evidence to support the trial court's finding that defendants' false representation was made to induce the plaintiffs to borrow money and ultimately resulted in the payment of the $25,000 loan commission. Plaintiff John Halagan testified that he was not in desperate need of funds when the loan was made and that he borrowed the $55,000 in reliance upon defendants' representation that they had a binding offer for the Solano Lodge. He

also stated that he paid the loan fee under the impression that it constituted defendants' real estate commission for the sale of the property.

This testimony is corroborated, circumstantially at least, by the exorbitant amount of the loan fee and by the agreement to refinance which Leon Ohanesian signed before the loan was made. A loan fee in the amount of $25,000 for a $55,000 loan, standing alone, is admittedly unconscionable. Significantly, the refinancing agreement which Leon Ohanesian signed reads as follows: ''Loan of 55,000 due to the estate of Abkar Setrakian on Nov. 1, 1963 shall be refinanced by Ohanesian Realty Co. if motel is not sold prior to then. Ohanesian Realty Co. hereby agrees to refinance Halagans to pay the estate off on the due date with Halagans consent and authorization.'' Moreover, in further corroboration of Halagan's testimony, Kirk Setrakian, the trustee of the estate out of which the $55,000 loan was made, stated that the loan discussion occurred after defendants had stated that they had a buyer for the Solano Lodge and had displayed a deposit receipt and check allegedly signed by Harry Minasian. And in reference to the nature of the commission which was charged by defendants, Setrakian testified as follows:

''Q. Was there any discussion concerning a commission on the sale of the Solano Lodge by Mr. Ohanesian?

A. Well, the only thing that I remember is that he told them that he was not going to charge them any money for selling the place, he was going to charge them now.

Q. He was going to charge them now?

A. Yes.

Q. Did he refer to what the charge was for; did he specifically state what the charge was for?

A. No. Well, he said he was not going to charge them when he sold the place later, but he would charge them now, but whether this was for a commission or sales commission, I don't know; or brokerage, loan brokerage, I am not too sure.''

Defendants assert that when plaintiffs signed the loan application they agreed in writing to pay a $25,000 loan commission in consideration for the procurement of the loan. Thus, relying on the parol evidence rule as embodied in Code of Civil Procedure section 1856, defendants allege that the court committed prejudicial error when it allowed plaintiffs to introduce parol evidence to change the terms of this written agreement, i.e., when it allowed plaintiffs to testify that the

$25,000 payment was a real estate commission instead of a brokerage loan commission. Section 1856 provides in part: "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases: 1. Where a mistake or imperfection in the writing is put in issue by the pleadings; 2. Where the validity of the agreement is the fact in dispute."

We would be inclined to agree with this contention if plaintiffs' only theory for recovery was failure of consideration, i.e., if the plaintiffs were simply seeking to recover a real estate commission for a sale which did not take place. However, as we have stated on more than one occasion, plaintiffs' theory for recovery was for fraud in the inducement. In other words, according to the evidence, plaintiffs' agreement to pay the loan commission was directly connected with defendants' false representation and the court was entitled to examine all of the circumstances surrounding the transaction. Moreover, the evidence was relevant to prove that plaintiffs were intentionally, wilfully and falsely led to believe that the loan commission that they agreed to pay when they signed the loan application was also defendants' real estate commission for the sale of the motel. It is the rule that parol evidence may not be used as a shield in order to perpetrate a fraud. In this connection, the second sentence of section 1856 of the Code of Civil Procedure states: "But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section eighteen hundred and sixty or to explain an extrinsic ambiguity, *or to establish illegality or fraud.*" (Italics added.)

During the hearing on the findings of fact the trial judge remarked: "The Court is convinced that the Halagans did not tell the truth when they said they didn't sign the loan application. Also, the Court was of the opinion that Mr. Ohanesian was not telling the truth about the transaction and the Court then was faced with the problem of whether the fact that the Halagans had not told the truth about that matter, should that preclude them from receiving the justice that the Court felt that they were entitled to. The Court finally arrived at the conclusion that, well, they may have thought that that point was crucial to their case and the Court felt it wasn't

and that they shouldn't be denied justice even though the Court felt they had committed perjury.''

Thus, without citing any authority to support their position, defendants boldly assert that the court ''has created a new type of action in equity awarding recovery to perjurious plaintiffs with unclean hands.''

■ We know of no rule which requires a trial judge to reject the entire testimony of a party or to deny recovery if he believes that the party testified falsely in some particulars. To the contrary, as we understand the rule, the trier of fact may disregard all of the testimony of a party, whether contradicted or uncontradicted, if it determines that he testified falsely as to some matters covered by his testimony (*Nelson* v. *Black*, 43 Cal.2d 612 [275 P.2d 473]). Alternatively, the trier of fact may accept that portion of the testimony which it believes to be true, particularly where it is corroborated by other independent evidence, as in the instant case.

In any event, the court's comment was made during the hearing on the findings of fact and was not included in the written findings which the court ultimately signed. ■ It is settled that a trial judge's antecedent remarks or opinions, not embodied in his written findings or judgment, may not be used to attack or impeach the findings or judgment (*DeCou* v. *Howell*, 190 Cal. 741 [214 P. 444]; *Scholle* v. *Finnell*, 173 Cal. 372 [159 P. 1179]; *City of Daly City* v. *Smith*, 110 Cal.App. 2d 524 [243 P.2d 46]. As stated by the court in *Oldis* v. *La Societe Francaise*, 130 Cal.App.2d 461, 472 [279 P.2d 184]: '' 'No antecedent expression of the judge, whether casual or cast in the form of an opinion, can in any way restrict his power to declare his final conclusion in the only manner authorized by law, to wit, by filing the 'decision' (findings of fact and conclusions of law) provided for by section 632 and 633 of the Code of Civil Procedure.' '' ·

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied January 11, 1968, and appellants' petition for a hearing by the Supreme Court was denied February 8, 1968. ...