[Civ. No. 24240. First Dist., Div. Four. July 9, 1968.]

MARION A. NELSON et al., Plaintiffs and Appellants, v. AMERICAN AIRLINES, INC., Defendant and Respondent.

744

Ostrow & Drucker and Leonard Nasatir for Plaintiffs and Appellants.

Brill, Hunt, DeBuys & Burby, Robert D. Brill and Abe Mutchnik for Defendant and Respondent.

CHRISTIAN, J.—Marion A. Nelson and her husband seek recovery from American Airlines for her injuries, and resulting loss of services, incurred when she was thrown about by a sudden and unexpected maneuver of an American Airlines airplane in which she was a passenger. According to the evidence received in a nonjury trial, Mrs. Nelson's flight proceeded normally on March 13, 1961, from Los Angeles, until just after the automatic pilot was switched on as the plane approached the intended cruising altitude of 27,000 feet. After the pilot had manually leveled off for one or two minutes, the altitude hold feature of the automatic pilot was engaged. The autopilot is linked to the horizontal stabilizer trim controls so as to maintain the selected altitude by adjustments of pitch trim. These adjustments are actuated by a feature of the autopilot which senses altitude as represented by atmospheric pressure. It is normally anticipated that as the autopilot is engaged in "altitude hold," when the aircraft has climbed to the desired altitude, a gradual downward adjustment of trim will necessarily be effected during the few moments when the aircraft is picking up speed after leveling off. However, on March 13, the autopilot overcompensated pitch trim, causing the aircraft to nose down rather than stay level. The copilot immediately disengaged the autopilot, and the pilot resumed manual control. In the cockpit the pitch change seemed slight; however the stewardess reported that some passengers were injured due to the more severe movement in the rear of the plane. Fuel was jettisoned and the plane returned to Los Angeles.

The aircraft log indicated that there had been some trouble with the altitude control feature of the automatic pilot on a flight the previous day. After a slight nose up and nose down movement, the operation had been normal. This incident was not regarded as serious, but the cause of the malfunction was unknown; therefore the amplifier computer, a component of the autopilot, was replaced as a precaution. Neither side called as a witness any member of the ground crew who diag-

nosed the trouble and made the replacement. The plane was not flight tested between the replacement of the equipment and the next day's flight.

The flight engineer described the equipment inspection which he performed before the March 13 flight. This procedure includes a test of the automatic pilot. Because a reference to the previous day's incident involving the automatic pilot was found in the logbook, that system was examined more thoroughly than usual. During the preflight check, the altitude hold functioned properly. The flight engineer testified that to check the automatic pilot it is not ordinarily necessary to perform a test flight.

After the malfunction on March 13, more components of the automatic flight system were replaced. Nevertheless, on a test flight conducted on March 14, a severe porpoising condition occurred about 30 seconds after the altitude control was engaged. Two further complaints about the automatic pilot were entered in the log on March 16 and March 17. The engineer stated that before the March 13 flight there was nothing on the log sheets to portend any malfunction of the automatic pilot. Neither he nor any other witness knew what specific defect in the autopilot caused the pitch change on March 13.

■ The trial court rendered judgment for respondent airline upon a finding that Mrs. Nelson's injuries were not "caused by any want of care on the part of said defendant."

On appeal the first contention is that the evidence does not support that finding. Upon such an issue, when two or more inferences can be reasonably deduced from the facts, this court is without power to substitute its conclusion for that of the trial judge. (*Goodman* v. *Community Sav. & Loan Assn.* (1966) 246 Cal.App.2d 13, 22-23 [54 Cal.Rptr. 456] ; 3 Witkin, Cal. Procedure (1954) Appeal, § 84, p. 2246.)

The trial court's memorandum opinion indicates that the doctrine of res ipsa loquitur was applied, to appellants' benefit, but that the court nevertheless found that respondent was not negligent. ■ The doctrine of res ipsa loquitur is properly invoked where (1) the accident is of a kind which does not ordinarily occur absent someone's negligence; (2) the agency or instrumentality which caused the accident was under the exclusive control of the defendant; (3) the accident was not due to any voluntary action or contribution on the part of the plaintiff. (*Ybarra* v. *Spangard* (1944) 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258] ; *Smith* v. *O'Donnell* (1932) 215 Cal. 714, 721-722 [12 P.2d 933] ; *Griffin* v. *Sardella*

(1967) 253 Cal.App.2d 937, 940 [61 Cal.Rptr. 834]; Prosser on Torts (3d ed. 1964) § 39, p. 218.) Respondent does not dispute the applicability of res ipsa loquitur in this case, but points out that the doctrine does not impose the burden of proof on respondent or create a presumption; rather it raised an inference of negligence. (*Villa* v. *Shaffer* (1966) 242 Cal. App.2d 815, 819 [51 Cal.Rptr. 856]; *Kohl* v *Disneyland, Inc.* (1962) 201 Cal.App.2d 780, 783 [20 Cal.Rptr. 367].) To rebut this inference, respondent, being a public carrier, had to satisfy the court that it exercised the utmost care and diligence for Mrs. Nelson's safe passage. (Civ. Code, § 2100; *Hardin* v. *San Jose City Lines, Inc.* (1953) 41 Cal.2d 432, 436 [260 P.2d 63]; *Roberts* v. *Trans World Airlines* (1964) 225 Cal.App.2d 344, 356 [37 Cal.Rptr. 291].) That showing could be made either by proving the definite cause of the accident and that respondent's lack of care was not involved therein, or such care in all possible respects as leads to the conclusion that the accident could not have resulted from want of care but must have been due to some unpreventable cause although the exact cause is unknown. (*Dierman* v. *Providence Hospital* (1947) 31 Cal.2d 290, 295 [188 P.2d 12]; *Griffin* v. *Sardella, supra,* 253 Cal.App.2d 937, 939.)

Respondent's evidence gave reasonable support to the court's conclusion that a careful and proper preflight check was performed by the flight engineer and that the handling of the aircraft after it took off conformed to the applicable standard of care. The evidence also indicated that a malfunction in the automatic pilot probably caused the sudden change in pitch. The issue remains whether there was evidence to dispel any possible inference that the automatic pilot malfunction was caused by some want of care on the part of ground maintenance personnel of respondent airline.

 It is contended by respondent that the preflight check performed by the flight engineer excluded he possibility of negligent maintenance of the aircraft. But the flight engineer made no such pretension in his testimony: "I wouldn't say in every case, but in *most* cases any malfunction would show up either on the indices or by actual movement of the stabilizer trim. . . ." (Italics added.) The record is entirely silent concerning the quality of the work done by maintenance personnel, either in the course of replacing the autopilot amplifier computer because of the previous day's malfunction or in the course of periodic servicing of the automatic flight system. Thus there was no evidence which the trial court could reasonably have taken as excluding such possibilities as the fol-

lowing: negligent errors were made in installing the replacement computer; an improperly serviced component had been installed; or earlier routine maintenance had been incomplete or otherwise improper. It appears likely that as a matter of trial strategy respondent relied upon the flight engineer's testimony concerning his preflight check as dispelling any inference of negligence under the doctrine of res ipsa loquitur and deliberately withheld presenting the testimony of ground maintenance personnel. But that reliance was misplaced: the evidence did not show either a definite cause unconnected with respondent's lack of care, or such care in all possible respects as leads to the conclusion that the accident must have been due to some unknown but unpreventable cause. Unlike in *Roberts* v. *Trans World Airlines, supra,* 225 Cal.App.2d 344, 353, where there was evidence pointing to a nonnegligent cause of the accident, here there is simply no evidence that negligence in maintenance of the equipment did not cause some malfunction of a kind such as the flight engineer admitted might possibly escape his preflight test. The judgment must therefore be reversed.

Appellants also argue that under Federal Aviation Agency regulations failure to flight test the craft prior to the flight constituted negligence. Federal Aviation Agency regulations, paragraphs 43.21 and 43.21a, in effect in 1961 (now 14 C.F.R. 91.167 [1967]) provide: ''[a] No person may carry any person [other than a crew member] in an aircraft that has been repaired or altered in a manner that may have appreciably changed its flight characteristics, or substantially affected its operation in flight until an appropriately rated pilot, with at least a private pilot's certificate, test flies the aircraft and logs the test flight in the aircraft records. [b] Paragraph [a] of this section does not require a test flight if ground tests or inspections, or both show conclusively that the repair or alteration has not appreciably changed the flight characteristics or substantially affected the flight operation of the aircraft.'' However, the replacement of a standard component in a flight system does not appear to us to be a repair or alteration within the meaning of the regulation, even though negligence in effecting such replacement might have dangerous consequences. To accept appellants' argument would be to require a flight test after any routine replacement of any simple but vital engine or airframe part, such as a tire, even though the purpose of the replacement is to *prevent* any change in the flight operation or characteristics of the aircraft by obviating deterioration of equipment. We conclude that the

failure to test fly the airplane was not negligence as a matter of law.

■ Appellants have advanced an interesting alternative argument, that Civil Code section 2101[1] imposes absolute liability upon a public carrier for injuries resulting from a defect in the vehicle. But this theory was never put before the trial court either in the pleadings, in the issues defined by the pretrial conference order, or in the evidence and arguments presented by counsel during trial.

''The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.'' (*Ernst* v. *Searle* (1933) 218 Cal. 233, 240-241 [22 P.2d 715] ; *Cunningham* v. *Southland Constr. Co.* (1967) 252 Cal.App.2d 722, 726 [60 Cal.Rptr. 849] ; *Thomson* v. *Casaudomecq* (1962) 205 Cal.App.2d 549, 553 [23 Cal.Rptr. 189] ; see also 3 Witkin, Cal. Procedure (1954) Appeal, § 96, p. 2264.) Because appellants did not rely on the theory of strict liability at trial, did not plead facts putting strict liability at issue, and did not raise it at pretrial, ths court may not consider appellants' contentions based on section 2101. (See *Batch* v. *Helena Light & Ry. Co.* (1916) 52 Mont. 517 [159 P. 411].)

The judgment is reversed.

Devine, P. J., and Rattigan, J., concurred.

---

[1]Section 2101: ''A carrier of persons for reward is bound to provide vehicles safe and fit for the purposes to which they are put, and is not excused for default in this respect by any degree of care.''