Georgia Jean **DONNELLY,** individually and on behalf of the heirs at law of Helen Hampton and as personal representative of the estate of Helen Hampton, Appellant,

v.

**NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK),** Appellee.

No. 92–3638.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1993.

Decided Feb. 17, 1994.

Counsel who presented argument on behalf of the appellant was Leland F. Hagan of Fargo, ND.

Counsel who presented argument on behalf of the appellee was Patricia Ellingson of Fargo, ND.

Before RICHARD S. ARNOLD, Chief Judge, and McMILLIAN and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Plaintiff Georgia Jean Donnelly, individually and on behalf of the heirs at law of her mother Helen Hampton and as the personal representative of the estate of Helen Hampton, appeals from a final judgment, entered in the District Court[1] for the District of North Dakota, upon a jury verdict in favor of defendant National Railroad Passenger Corp. (Amtrak) in this wrongful death action. For reversal, plaintiff argues the trial court erred in (1) granting partial summary judgment in favor of defendant on strict liability and res ipsa loquitur, (2) making certain evidentiary rulings,[2] (3) instructing the jury on the relevance of other accidents, and (4) dismissing the conscious pain and suffering claim. For the reasons discussed below, we affirm the judgment of the district court.

This action arose from the mysterious death of Helen Hampton. Hampton and her daughter Helen Lucas had purchased passenger tickets on an Amtrak train operated

---

1. The Honorable Karen K. Kline, United States Magistrate Judge for the District of North Dakota. The case was tried by the magistrate judge upon the consent of the parties, pursuant to 28 U.S.C. § 636(c).

2. Plaintiff argues the trial court abused its discretion in admitting certain hearsay testimony and in excluding evidence of 14 other similar train accidents, part of an excerpt from a learned treatise, photographs and a videotape of dog latches found open on other trains, and a videotape of a train passing the site of the accident.

by defendant. On May 14, 1988, they boarded the train at Bingen, Washington, to visit relatives in Staples, Minnesota. The only means of exiting the train was through the entraining doors located on each side of the passenger car; the windows are sealed; the vestibule areas between the cars are enclosed; the end door of the last car was locked and secured by two safety bars across the door. The entraining doors are secured by a door handle and a "dog latch" near the top of the door. The door handle can be locked but is not locked because the doors serve as emergency exits. In order to open the door, the dog latch must be open and a certain amount of force must be used to push down on the door handle. The door opens inward and will swing closed unless it is latched in place. The two women were seated on the upper level of the passenger car, near the stairway which led to the lower level where the restrooms, baggage compartment, and entraining doors were located. Their trip was uneventful for the first two days. About midnight on May 16, 1988, Hampton and Lucas had fallen asleep in their seats. The train stopped briefly in Grand Forks, North Dakota. Lucas noticed that Hampton was not in her seat; Lucas thought her mother had probably gotten up to go to the restroom and she dozed off.

Lucas awoke as the train stopped in Fargo, North Dakota, and noticed that Hampton had not returned to her seat. At this point Lucas became apprehensive and checked the restrooms on the lower level of the passenger car, thinking that perhaps her mother had become disoriented or had accidentally locked herself in the restroom. Lucas did not find Hampton on the lower level, and it was about 1:30 a.m. when she notified the conductor that her mother was missing. The conductor and three crew members searched the entire train without finding Hampton. All the train doors and windows were found secured or closed. When the train stopped at Detroit Lakes, Minnesota, the conductor telephoned the Fargo station, but no one there had seen a woman matching Hampton's description. The conductor and crew searched the train again without success.

**3.** Plaintiff also sued Burlington Northern Railroad Co.; those claims were voluntarily dis-

The train stopped at Staples, Minnesota, as scheduled, at about 3:30 a.m. A very distraught Lucas was met by her relatives; they waited at the station for a couple of hours for news but then left. Later that morning, at about 10:30 a.m., a freight train crew found Hampton's body on the right or south side of the track about 14–15 miles north of Fargo. The track at this point is relatively level and straight. Hampton's injuries (broken ribs, a head laceration, but no skull fracture) were consistent with a high-velocity impact with the ground. It was undisputed that the train had been travelling at about 70 mph at this point. There were no eyewitnesses. The local county sheriff's office investigated the death and has classified it as an unsolved homicide. Hampton was 73 years old.

Plaintiff brought this action against defendant[3] for Hampton's death, alleging strict liability and negligence. Plaintiff's theory was that Hampton somehow exited the train through the right entraining door and as a result fell to her death. Plaintiff alleged that the door was defectively designed, specifically, that the door should have been secured with an automatic mechanism to lock the doors when the train was in motion. Plaintiff also alleged that defendant's employees failed to lock the door or secure the dog latch and that, relying on the doctrine of res ipsa loquitur, Hampton would not have exited the train in the ordinary course of things if defendant had not been negligent. Defendant filed a motion for summary judgment. The trial court granted summary judgment in favor of defendant on the strict liability claim and the doctrine of res ipsa loquitur. *Donnelly v. National R.R. Passenger Corp.*, Civil No. A3–90–54 (D.N.D. Feb. 4, 1992) (memorandum and order). The case proceeded to trial on negligence.

At trial, evidence was presented about the design and operation of the entraining doors. Plaintiff's expert witness testified that the doors should have been equipped with an automatic locking mechanism and referred to the British Rail System's implementation of

missed with prejudice before trial.

automatic door locks; plaintiff also introduced evidence of 3 similar incidents, but the trial court refused to permit plaintiff to introduce evidence of 14 other incidents, photographs and a videotape of dog latches found open on other trains, and a videotape of a train passing the site of the accident. Defendant's expert witness testified that the door design was safe, reliable and incorporated appropriate technology and that the doors were continually inspected by the train crew. At the close of plaintiff's case, the trial court dismissed the conscious pain and suffering claim. The jury found in favor of defendant. This appeal followed.

STRICT LIABILITY

■ Plaintiff first argues the trial court erred in granting summary judgment in favor of defendant on the claim of strict liability. We review the grant of summary judgment de novo. The question before the trial court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct.

2505, 2510–11, 91 L.Ed.2d 202 (1986); *Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992); *St. Paul Fire & Marine Insurance Co. v. FDIC,* 968 F.2d 695, 699 (8th Cir.1992).

■ Plaintiff argues that the trial court erred in holding that N.D.Cent.Code § 8–02–03 (1987) does not impose strict liability on a common carrier for injuries resulting from a defect in the vehicle. That section provides that "[a] carrier of persons for reward shall provide vehicles safe and fit for the purposes to which they are put and is not excused for default in this respect by any degree of care." Plaintiff reads this section to impose absolute liability on defendant, as a common carrier, for Hampton's death if the passenger car was unsafe or unfit, even though defendant had exercised all possible care. Defendant argues this section does not impose strict liability and that the standard of care required of common carriers with respect to both providing equipment and its operation is utmost care and diligence, that is, care that is the highest that reasonably can be exercised consistent with the mode of transportation used and the practical operation of its business as a carrier.[4]

We need not decide whether the trial court correctly concluded that § 8–02–03 does not impose strict liability.[5] Even assuming for

---

4. The trial court so instructed the jury in instruction no. 20.

5. The parties have not cited to any North Dakota cases definitively construing § 8–02–03, and our research has not discovered any. Plaintiff's construction is supported by *Southwestern Greyhound Lines, Inc. v. Smith,* 277 P.2d 157, 159 (Okla.1954) (construing identical statute to impose strict liability but only with respect to failure of carrier's physical equipment and not to foreign objects, in this case a sewing needle stuck in seat cushion, which are no part of equipment furnished for transportation of passengers for hire), and *Henrichs v. Inter City Bus Lines,* 79 S.D. 267, 111 N.W.2d 327 (1961) (holding identical statute imposes strict liability but only with respect to vehicle itself and not its operation, in this case failure of heater on bus to operate). However, defendant's construction is supported by *Pennsylvania R.R. v. Pomeroy,* 99 U.S.App. D.C. 272, 239 F.2d 435, 439–40 & n. 3 (1956) (holding railroad which provides vestibule cars would be guilty of negligence if it failed to exercise highest degree of care, consistent with practical operation of railroad, to keep vestibule doors closed between stations), *cert. denied,* 353

U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 859 (1957), and *Newkirk v. National R.R. Passenger Corp.,* 618 F.Supp. 1422, 1424 (S.D.Ill.1985) (rejecting application of res ipsa loquitur doctrine, a rule of circumstantial evidence under which jury may infer negligence, in case involving death of passenger who exited train through entraining door), *aff'd mem.,* 805 F.2d 1038 (7th Cir.1986).

As noted by the trial court, § 8–02–03 is based upon a California statute, Cal.Civil Code § 2101. For that reason, both parties have cited California cases in their briefs. *Gradus v. Hanson Aviation, Inc.,* 158 Cal.App.3d 1038, 205 Cal.Rptr. 211 (1984), cited by defendant, supports the trial court's conclusion. In that case the jury instructions on the standard of care of a common carrier incorporated the provisions of Cal.Code § 2101. The appellant, an aircraft charter and lease company, contended these instructions incorrectly imposed absolute liability for injury caused by the failure to provide safe and fit vehicles. The court held that the instructions did not misstate the applicable standard of care and that any ambiguity in that respect had been cured by other instructions which clarified that

purposes of analysis that § 8–02–03 does impose strict liability upon a common carrier to provide safe and fit vehicles, we hold the trial court did not err in granting summary judgment in favor of defendant because there was no evidence that the alleged design defect, the failure to equip the door with an automatic locking mechanism, proximately caused Hampton's death. This is because the failure to lock the door could not have opened the door. Even if the door should have been locked, the door could not have been opened unless someone affirmatively lifted the dog latch, operated the door handle and then pulled the door open. In other words, the failure to lock the door could not have caused Hampton to exit the train. *See Newkirk v. National R.R. Passenger Corp.*, 618 F.Supp. 1422, 1424 (S.D.Ill.1985) (*Newkirk*) (railroad's failure to lock doors was not cause of injury where doors could not have been opened without someone affirmatively lifting safety handle and unlocking snap-lock), *aff'd mem.*, 805 F.2d 1038 (7th Cir.1986).

## RES IPSA LOQUITUR

Plaintiff next argues the trial court erred in holding that the doctrine of res ipsa loquitur did not apply. The trial court found that there were several possible explanations for Hampton's exit from the train and that none of the possible explanations was more likely than the others. Slip op. at 8. The trial court refused to apply the doctrine of res ipsa loquitur because plaintiff failed to prove that each possible explanation for Hampton's death was attributable to defendant's negligence. *Id.* Plaintiff argues the trial court incorrectly required her to conclusively exclude all other possible explanations for Hampton's death than negligence. She argues res ipsa loquitur only requires proof of facts which make negligence the more probable explanation and that negligence was more probable than either suicide or homicide. Defendant argues the trial court correctly decided that res ipsa loquitur did not apply.

"Res ipsa loquitur is a rule of circumstantial evidence under which the jury may infer negligence in the absence of direct evidence to that effect." *Newkirk*, 618 F.Supp. at 1424 (citation omitted); *Victory Park Apartments, Inc. v. Axelson*, 367 N.W.2d 155, 158–59 & n. 2 (N.D.1985) (*Axelson*) (res ipsa loquitur is not a rule of substantive law but is a principle of evidence). In North Dakota the requisite foundational facts for application of res ipsa loquitur are: "(1) the accident was one which does not ordinarily occur in the absence of negligence; (2) the instrumentality which caused the plaintiff's injury was in the exclusive control of the defendant; and (3) there was no voluntary action or contribution on the part of the plaintiff." *Axelson*, 367 N.W.2d at 159 (footnote omitted).

We hold the trial court did not err in holding that the doctrine of res ipsa loquitur did not apply in the present case. The circumstances surrounding Hampton's exit from the train are wholly unknown to the parties. No one knows how Hampton exited the train. Because it is at least equally probable that reasons other than negligence, much less negligence on the part of defendant, could have caused Hampton to exit the train, it cannot be said that the accident would not have occurred in the ordinary course if defendant had not been negligent. For example, it is equally probable that Hampton voluntarily exited the train or that someone pushed Hampton out of the train.

In addition, even assuming for purposes of analysis that the door was the instrumentality which caused Hampton's exit from the train, plaintiff failed to show that the door was in the exclusive control of defendant. The doors were accessible to all passengers and could be opened, with some effort, by anyone, for reasons of both safety and convenience. *See Pennsylvania R.R. v. Pomeroy*, 99 U.S.App.D.C. 272, 239 F.2d 435,

the standard of care was not absolute liability, but negligence. *Id.* at 1049–50 & n. 3, 205 Cal.Rptr. at 216–17 & n. 3. *Nelson v. American Airlines, Inc.*, 263 Cal.App.2d 742, 70 Cal.Rptr. 33 (1968), cited by plaintiff, describes as "interesting" the appellants' argument that § 2101 imposes absolute liability upon a public carrier for

injuries resulting from a defect in the vehicle. *Id.* at 748, 70 Cal.Rptr. at 37. However, the court did not consider this theory on the merits because the appellants did not rely on the theory of strict liability at trial, did not plead facts putting strict liability at issue, and did not raise it at pretrial. *Id.*, 70 Cal.Rptr. at 38.

439–40 & n. 3 (1956) (*Pomeroy* ) (holding res ipsa loquitur did not apply where no proof that railroad had exclusive control over opening of car doors), *cert. denied,* 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 859 (1957); *Axelson,* 367 N.W.2d at 160 (holding res ipsa loquitur did not apply where no proof that tenant had exclusive control over cigarette that caused fire).

■ Moreover, even assuming sufficient facts to warrant an inference of negligence on the part of defendant, plaintiff failed to show that such negligence proximately caused Hampton to exit the train. All the train doors and windows were found secured or closed. As discussed above, even if the door should have been locked or the dog latch had been lifted, the door could not have been opened unless someone affirmatively operated the door handle and then pulled open the door. Under these circumstances, defendant's failure to lock the door or to secure the dog latch did not proximately cause Hampton to exit the train. *Newkirk,* 618 F.Supp. at 1425; *see also Pomeroy,* 239 F.2d at 443–44; *Axelson,* 367 N.W.2d at 161 n. 4 (res ipsa loquitur has no application to proximate cause and does not dispense with requirement that plaintiff must prove that act or omission on which defendant's liability is predicated is proximate cause of injury).

TRIAL ERRORS

■ Plaintiff also argues the trial court erred in making certain evidentiary rulings, instructing the jury on the relevance of other accidents, and dismissing the conscious pain and suffering claim. All these allegations of error are trial errors. We do not reach these allegations of error because we conclude the trial court should not have submitted the issue of negligence to the jury or should have directed a verdict on this issue in favor of defendant. As discussed above, there was insufficient evidence as a matter of law that defendant's negligence proximately caused Hampton to exit the train. *See Pomeroy,* 239 F.2d at 441 & n. 5 (cases holding railroad entitled to directed verdict or judgment as matter of law where passenger has been killed as result of unwitnessed and unexplained fall through unexplained open vestibule door); *Newkirk,* 618 F.Supp. at 1425 (plaintiff could not prove railroad's failure to lock doors was cause of passenger's death).

Accordingly, we affirm the judgment of the district court.