[No. A088416. First Dist., Div. Four. Nov. 29, 2000.]

CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Appellant, v. DENNIS L. GIVENS, Defendant and Respondent.

## COUNSEL

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Ann White and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Appellant.

Janet C. Mangini for Defendant and Respondent.

## OPINION

**SEPULVEDA, J.**—"The usual paternity suit involves a man, hereafter referred to as the defendant, who does not wish to be declared the father of the child. Because of the accuracy and statistical significance of modern blood testing, the California Legislature has adopted a statutory presumption of paternity. If the defendant's blood test results in a particular numerical score, he is presumed to be the father. Family Code section 7555 . . . provides in relevant part: '(a) There is a rebuttable presumption, affecting the burden of proof, of paternity, if the court finds that the paternity index, as calculated by the experts qualified as examiners of genetic markers, is 100 or greater. This presumption may be rebutted by a preponderance of the evidence.' [¶] . . . [¶] The defendant is entitled to introduce other expert testimony. (Fam. Code, § 7557.) Once the statutory presumption is triggered, the court must consider all of the evidence, including any blood test evidence. (Fam. Code, § 7554, subd. (b).)" (*County of El Dorado v. Misura* (1995) 33 Cal.App.4th 73, 82 [38 Cal.Rptr.2d 908].)[1] ▮ One of the ways by which a defendant can rebut the presumption is to present evidence that he did not have access to the mother during the period of conception. (*Id.* at p. 83.)

The City and County of San Francisco (City), which commenced this action to recover Aid to Families With Dependent Children support payments (§§ 17402, 17404), presented expert testimony that defendant's blood yielded a paternity index figure of 1290; according to the expert, this amounted to a "99.92 percent" likelihood of paternity. The defendant here presented what the trial court found to be "clear and convincing evidence" that he did not have access to the mother. ▮ ▮ ▮ The court thereupon entered an order with its finding that there was "no probability" that defendant was the father. The City filed a timely notice of appeal.[2]

---

[1]Statutory references are to the Family Code unless otherwise indicated.

[2]We agree with the parties that the trial court's order was equivalent to a "final determination of parentage" (§ 17404, subd. (a)) and thus constitutes an appealable final

■    As we see it, there are three issues. The first is the trial court's frank invitation to "the appellate court to tell me . . . what role the DNA evidence at such a high index plays, when there is clear and convincing evidence of no access." The second is a number of subtle arguments made by the City which leave the general impression that the trial court misperceived its function, and did not understand the relationship between the "hard" genetic evidence and the "soft" testimonial evidence. Finally, there is the City's claim that the trial court's order is not supported by substantial evidence.

Because the first and second issues share a measure of overlap, we can answer both the trial court's invitation and some of the City's arguments at the same time. Initially, there is absolutely no basis for the City to argue that the trial court "failed to weigh all the evidence" by looking only at the testimony concerning the issue of defendant's access to the mother, thereby ignoring the genetic evidence and the presumption of paternity it supported. The City's argument is based on a single comment made by the trial court when it announced its conclusions at the end of the trial.[3] That comment does not recur in the court's written decision and order. The comment is in the nature of a prefatory explanation and cannot be used to impeach or attack the written order. (See *Halagan v. Ohanesian* (1967) 257 Cal.App.2d 14, 21 [64 Cal.Rptr. 792] and decisions cited.) Moreover, the comment reflects an approach that has the sanction of the definitive precedent on this topic: "[E]xpert testimony cannot supplant evidence of access; *expert testimony must be viewed through the lens provided by the soft evidence.*" (*County of El Dorado v. Misura, supra,* 33 Cal.App.4th 73, 81, italics added.)

The written order clearly exonerates the trial court of the charge that it did not know what it was doing. The order commences with the court stating that "[t]he real issue in this case, as in so many paternity cases, is what the import of a paternity index over 1,000 is in the determination of paternity." The court proceeds to discuss the presumption of section 7555 and the "all of the evidence" language of section 7554 quoted above. The order also tracks the analytical framework of *County of El Dorado v. Misura, supra,* 33

---

judgment. (See Code Civ. Proc., § 904.1, subd. (a)(1); *City and County of San Francisco v. Stanley* (1994) 24 Cal.App.4th 1724, 1727 [30 Cal.Rptr.2d 106].)

[3]The trial court commenced its oral ruling and review of the evidence as follows: "Soft evidence is that evidence of people's memories and people's experiences in the retelling of history, corroborating documentary evidence and so on and so forth. But the hard evidence, the scientific evidence, is the kind that Dr. Morris testified to today. *And so what we need to look at is the soft evidence before we can take a look at the hard evidence, to see whether the soft evidence . . . gives us the doorway through which we explore the hard evidence. Because the hard evidence is based upon prior probabilities that such access for sexual intercourse could have occurred,* so let's take a look at that." We have italicized the comment upon which the City's argument is based.

Cal.App.4th 73. It is particularly difficult to discern the ground on which the City argues the trial court gave insufficient heed to the presumption of section 7555. The order corroborates the statutory presumption that the court followed all applicable legal principles (Evid. Code, § 664; *Ross v. Superior Court* (1977) 19 Cal.3d 899, 913-914 [141 Cal.Rptr. 133, 569 P.2d 727]; *People v. Stringham* (1988) 206 Cal.App.3d 184, 201 [253 Cal.Rptr. 484]), particularly as to section 7555 and how it operates, the precise matter dealt with in *Misura.*

In fact, the court devoted a significant part of its written order recording dissatisfaction with *Misura* and the desirability "that a higher level of proof be attached to DNA genetic testing than the rebuttable presumption of an index of 100." This was the same point the court had previously made with its oral invitation for guidance concerning the impact of genetic testing evidence when the paternity index reached a figure far in excess of 100. Such guidance is unnecessary—the trial court acted in conformity with sections 7554 and 7555. Any change must come from the Legislature.

The City points out that any genetic evidence pointing to paternity must logically entail an inference of access. But it should be remembered that a presumption is not itself evidence. (Evid. Code, § 600, subd. (a).) Moreover, section 7555 expressly states that its presumption is rebuttable by a preponderance of the evidence and that the presumption is one affecting the burden of proof. It thus calls into play the normal rules governing such presumptions, which in this context would require the defendant to produce evidence that he was not the father. (Evid. Code, § 606.) When the defendant satisfied that burden by producing evidence in the form of his testimony that he did not have access to the mother during the time of conception, evidence which the trial court found to be "clear and convincing," the normal rules of evidence would be satisfied. (Evid. Code, §§ 115, 411.) If the City were to prevail with its claim, an inference implicit in a presumption would be deemed to have greater evidentiary weight than the direct testimony of a witness. Should the City prevail with its argument that the defendant's direct testimony cannot by itself constitute substantial evidence, contrary to the command of Evidence Code section 411, the rebuttable presumption affecting the burden of proof established by section 7555 would have an independent potency more akin to a conclusive presumption. This would stand the plain language of section 7555 on its head.

That plain language clearly contemplates that evidence other than the presumption can be deemed more credible. There is nothing to suggest that the evidentiary heft of the presumption established by section 7555 is increased by a higher number on the paternity index. A similar argument was

rejected years ago (*County of El Dorado v. Misura, supra,* 33 Cal.App.4th 73, 82-83 [paternity index of 970]) and we see no reason to reach a different conclusion. If there is evidence other than the presumption, the trial court is to consider all of it. (§ 7554, subd. (b).)[4] Implicit in such a plenary examination is the chance of the other evidence being deemed more persuasive. Any other conclusion would make the presumption the tail wagging the dog.[5]

The only issue remaining to be addressed is whether the record contains substantial evidence to support the trial court's central finding that the defendant did not have access to the mother during the period of conception. It was undisputed that the child was born in March 1996. It was also undisputed that defendant and the mother had lived together, and had sexual relations, for several months before she moved to Los Angeles in January of 1995. The mother's testimony was that the child was conceived when the mother made a weekend trip from Los Angeles in June of 1995 to visit defendant in San Francisco. The defendant testified that there was no such visit, that he had not had sexual relations with the mother since she left in January 1995, and that the last time he saw her in 1995 was in March. He did not see her again until 1996. The trial court made express findings that the mother was not "credible in any way, shape, or form," whereas the defendant's evidence on access was "clear and convincing." The latter finding is clearly based upon the defendant's testimony, which, as previously mentioned, is by itself sufficient to constitute substantial evidence. (Evid. Code, § 411; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].)

---

[4]One of the out-of-state decisions repeatedly cited in *Misura* makes this principle clear: "The fundamental problem in the presentation of blood test results is conveying to the trier of fact the need to integrate the blood test results with the other evidence presented in the case. . . . [¶] . . . [¶] . . . It is important for the trier of fact to understand that the paternity index must not be taken as practically conclusive evidence of paternity but should be considered in conjunction with other evidence presented in the case." (*Plemel v. Walter* (1987) 303 Or. 262 [735 P.2d 1209, 1217-1218]; see also (*County of El Dorado v. Misura, supra,* 33 Cal.App.4th 73, 78 [" '[A] fact-finder is naturally tempted to seize upon statistical figures, like the paternity index or the probability of paternity, as lifelines of objective truth in a sea of prevarication. "Soft" evidence involving difficult questions of credibility and other circumstantial matters may be submerged or lost because it appears unnecessary to resolve the questions in light of the hard, scientific, mathematical proof.' " quoting Peterson, *A few Things You Should Know About Paternity Tests (But Were Afraid to Ask)* (1982) 22 Santa Clara L.Rev. 667, 684].)

[5]The City's expert made an observation during trial that is particularly pertinent. He testified that while the blood test "establishes a probability of paternity . . . it doesn't prove it in an absolute since [*sic*: sense], but nothing in the courtroom establishes that an absolute sense is the truth. We know that there is some underlying truth. He's either the father or he's not. We have to make decisions in the courtroom and in the laboratory based on knowledge that, by definition, is incomplete. That's just life."

The trial court acted in accordance with the law and its determinative finding is supported by substantial evidence. The order must therefore be affirmed.

Hanlon, P. J., and Reardon, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 28, 2001. Kennard, J. was of the opinion that the petition should be granted.